UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHARON ANN SIEGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:13-cv-953-CAN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration | ) | |
| | ) | |
| Defendant. | | |

**OPINION AND ORDER**

On September 9, 2013, Plaintiff Sharon Siegel ("Siegel") filed her complaint in this Court. On January 15, 2014, Siegel filed her opening brief requesting that this Court reverse or remand the Commissioner's decision under sentence four of 42 U.S.C. § 405(g). On April 24, 2014, Defendant Commissioner Carolyn W. Colvin ("the Commissioner") filed her response brief. On April 30, 2014, Siegel filed her reply brief adding a request for remand pursuant to sentence six of 42 U.S.C. § 405(g) based on new and material evidence. With the Court's permission, the Commissioner filed a sur-reply on June 5, 2014. Siegel's filing dated on May 19, 2014, was construed by the court as a sur-response. This court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.    PROCEDURE**

On August 9, 2010, Siegel filed her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income pursuant to 42 U.S.C. §§ 416(i), 423 alleging disability due to bipolar disorder, severe depression, and anxiety with an alleged onset date of July 29, 2010. Her claims were initially denied on September 27, 2010, and also upon

reconsideration on February 23, 2011.  Siegel appeared at a hearing before the Administrative Law Judge ("ALJ") on March 16, 2012.

On May 14, 2012, the ALJ issued a decision holding that Siegel was not disabled.  The ALJ found that Siegel met the insured status requirements of the Social Security Act through December 31, 2014.  The ALJ also found that Siegel had not engaged in substantial gainful activity since July 29, 2010, but had received unemployment benefits in the third and fourth quarters of 2010 as well as first, second, and fourth quarters of 2011. The ALJ found that Siegel had the severe impairments of bipolar disorder and polysubstance abuse but that Siegel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that Siegel had the residual functional capacity to perform a full range of work at all exertional levels but that she was limited to simple, routine and repetitive tasks.  The ALJ then found that Siegel was capable of performing past relevant work as a marker II and store laborer.  In addition, the ALJ determined that although Siegel was capable of performing past relevant work, there were also other jobs existing in the national economy that she could perform.

On July 24, 2013, the Appeals Council denied review of the ALJ's decision making it the Commissioner's final decision.  *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.  On September 9, 2013, Siegel filed a complaint in this Court seeking a review of the ALJ's decision.  Shortly thereafter on September 18, 2013, Siegel filed a second application for disability benefits.  On January 13, 2014, the Commissioner issued a Notice of Award based on Siegel's second application awarding her benefits and finding her disabled as of May 15, 2012—just one day after the ALJ issued his decision denying Siegel's first application

for disability benefits. Siegel received the Notice of Award some time after filing her opening brief in this case. Siegel notified the Court of her award in her reply brief.

## II. ANALYSIS

### A. Facts

Siegel was a 53 year old female at the time the ALJ denied her claims. She has a high school education and performed past relevant work as a marker II and store laborer.

#### 1. Claimant's Hearing Testimony

At the hearing, Siegel testified that she had trouble concentrating, trouble with memory, and difficulty motivating herself to shower more than four times a week. She also testified that she had depression and anxiety with suicidal thoughts. She took multiple medications daily to address her various symptoms. Siegel reported hand tremors that affected her writing and functions such as putting in earrings or buttoning as the only side effect from her medications.

Siegel also testified that she was able to drive but had problems at night on unfamiliar roads. She stated that she lived alone and would occasionally talk to other women in her apartment building. Siegel indicated that she shopped for groceries on her own, went to the library, and attended Alcoholics Anonymous meetings regularly. She explained that she spent time with her grandchildren and watched them about once a week.

#### 2. Mental Impairments

Siegel was hospitalized eight times between April 2010 and March 16, 2012, the date of her ALJ hearing.[1] Siegel was hospitalized at Saint Anthony Hospital from April 5, 2010, to April 14, 2010, because of suicidal ideation after an overdose. While hospitalized, she attended

---

[1] Siegel's hospitalizations began before her alleged onset date of July 29, 2010.

3

therapy and continued her prescribed medications. Her mood and behavior stabilized leading to her release. A report dated April 26, 2010, noted that Siegel's thought process, including memory and attention/concentration were "within normal limits." Doc. No. 9 at 380. Siegel then received outpatient treatment from the Swanson Center until August 13, 2010, for bipolar disorder as well as polysubstance abuse.

On December 28, 2010, Siegel returned to Saint Anthony Hospital where she was treated for severe Bipolar I Disorder until January 3, 2011. While there, she was placed under close observation for her safety, continued taking her medication, attended therapy, and participated in groups. Siegel denied any suicidal ideation when she was discharged. Three months later, in April 2011 she voluntarily admitted herself to Saint Anthony Hospital for about a week because of symptoms related to her bipolar disorder, which were treated with continued medication, and group and individual therapy. She was discharged on April 20, 2011, when her anxiety and depression symptoms had improved.

Siegel was again hospitalized from May 5, 2011, through May 10, 2011, at Saint Anthony Hospital following a suicide attempt. At the time, a mental status examination revealed that her memory and cognitive function were fair. She attended group programs in the unit, including therapy, and denied suicidal ideation at her time of discharge. One month later, she was hospitalized at Porter Starke Services from June 11, 2011, to June 16, 2011, for major depressive disorder, recurrent, severe. Upon discharge she denied suicidal ideation and stated she was doing much better. Her mental status exam that time indicated normal cognition, intact memory, and average intelligence.

Siegel was again hospitalized at Saint Anthony Hospital from December 9, 2011, to

December 13, 2011, suffering from Lithium toxicity. After being stabilized, she was transferred to the psychiatric floor based on her bipolar disorder diagnosis as well as her history of alcohol abuse in remission. Again, upon discharge she stated she had no suicidal ideation and her sleep and appetite had stabilized. From December 22, 2011, to December 24, 2011, Siegel returned Porter Starke Services for inpatient treatment related to her bipolar disorder, major depressive disorder, and alcohol dependence. Upon discharge, she again denied suicidal ideation and her thought process was labeled "logical goal directed." Doc. No. 9 at 522. She was then hospitalized again from March 6, 2012, to March 8, 2012, for bipolar disorder, polysubstance dependence in partial remission, and a personality disorder. Her memory and attention were reported as within normal limits at that time.

### 3. Physical Impairments

Siegel also suffered from physical impairments. In February 2010, Siegel was initially diagnosed with carpal tunnel syndrome, which was confirmed by a nerve conduction study in January 2011 showing mild bilateral carpal tunnel syndrome. However, the record includes no further evidence of treatment for carpal tunnel after the January 2011 diagnosis. From July 2011, Siegel also suffered with left knee pain that ultimately required surgery in February 2012 even after a series of injections to the knee. Siegel also complained of left shoulder pain starting in September 2011. In January 2012, she underwent a separate arthroscopic surgery as the result of a failed series of injections.

### B. Standard of Review

In reviewing disability decisions of the Commissioner, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and free of legal error. *See* 42 U.S.C. § 405(g);

*Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (*quoting Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). An ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

To be entitled to disability insurance benefits under 42 U.S.C. § 423 or supplemental security income under 42 U.S.C. § 1381a, Siegel must establish that she is "disabled." *See* 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairment meets or equals any impairment listed in the regulations and therefore is deemed so severe as to

6

preclude substantial gainful activity; (4) the claimant is unable to perform her past relevant work given her RFC; and (5) the claimant cannot adjust to other work in light of her RFC.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)[2]; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4).  An affirmative answer at either Step Three or Step Five establishes a finding of disability.  *Briscoe*, 425 F.3d at 352.  At Step Three, if the impairment meets any of the severe impairments listed in the regulations, the Commissioner acknowledges the impairment and finds the claimant disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which is then used to determine whether the claimant can perform her past work under Step Four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e)-(g).  The claimant bears the burden of proof on Steps One through Four, but the burden shifts to the Commissioner at Step Five.  *Young*, 362 F.3d at 1000.

### C. Issues for Review

Siegel brings two alternative theories for remand to the Court's attention in her briefing. First, Siegel contends that the ALJ's decision was not supported by substantial evidence making reverse or remand proper under sentence four of 42 U.S.C. § 405(g).  She specifically challenges the ALJ's Step Two decision as to the severity of her physical impairments, his Step Three

---

[2] The regulations governing DIB are found at 20 C.F.R. Part 404.  The SSI regulations are substantially identical to the DIB regulations and are set forth at 20 C.F.R. Part 416.  For convenience, only the DIB regulations will be cited henceforth in this opinion.

Listing analysis, and his Step Four RFC determination. Siegel argues that the ALJ's RFC cannot stand because the ALJ (a) failed to give controlling weight to the opinion of her treating psychiatrist, Dr. Mitchell Goldstein, (b) gave great weight to opinions of the consultative examiners, and (c) ignored limitations affecting her ability to perform past relevant work or engage in competitive employment. Second, Siegel contends that remand is warranted under sentence six of 42 U.S.C. § 405(g) to allow the Commissioner to consider the effect of allegedly new and material evidence, namely Siegel's recent award of disability benefits, on her first application for benefits.

As discussed below, the Court finds that a sentence four remand is appropriate based on the ALJ's failure to articulate clearly his rationale for refusing to give controlling weight to the opinion of Siegel's treating psychiatrist, Dr. Goldstein. Therefore, the Court limits its opinion to that issue.

### D. Remand is warranted under sentence four because the ALJ's RFC determination was not supported by substantial evidence.

At Step Four, the ALJ must make an RFC determination in order to assess whether a claimant is able to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is "an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1545; *Young*, 362 F.3d at 1001. The record may include medical signs, diagnostic findings,

the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p 1996. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1512(c). The ALJ must rely on medical opinions based upon objective observations and not merely a recitation of a claimant's subjective complaints when evaluating the claimant's RFC. *Rice*, 384 F.3d at 371. Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work-related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

Among multiple challenges to the ALJ's RFC determination, Siegel contends that the ALJ's failure to give the opinion of Dr. Goldstein, Siegel's treating psychiatrist, controlling weight constituted as error worthy of remand. In February 2012, Dr. Goldstein prepared a Medical Source Statement for Siegel's attorney in which he opined that Siegel's mental impairments left her with a combination of marked and moderate limitations in her ability to perform assorted work-related functions and would cause her to miss more three days of work per month. The ALJ afforded Dr. Goldstein's opinion little weight rather than controlling weight. Siegel argues that Dr. Goldstein's opinion was entitled to controlling weight because he had treated Siegel at Porter Starke since 2011, he was the last doctor to examine her, and he used her most recent medical records in making his determinations. Moreover, Siegel appears to

contend that the ALJ failed to articulate properly his rationale for giving Dr. Goldstein's opinion less than controlling weight.

An ALJ must give a treating physician's opinion controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is "not inconsistent with other substantial evidence in the record." *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-8p; SSR 96-2p. Generally, an ALJ weighs the opinion of a treating source more heavily because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(c)(2). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. *Dixon*, 270 F.3d at 1177; 20 C.F.R. § 404.1527(d)(1). "Once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." *Hofslien*, 439 F.3d at 376. When a treating physician's opinion is "based on the claimant's subjective complaints, the ALJ may discount it." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). While the ALJ is not required to award a treating physician controlling weight, the ALJ must articulate, at a minimum, his reasoning for not doing so. *Clifford*, 227 F.3d at 870.

If an ALJ does not give a treating physician's opinion controlling weight, he must consider factors, including the claimant's examining and treating relationship with the source of the opinion, the support provided for the medical opinion, its consistency with the record as a whole, and the physician's specialty, when determining what weight to give to the opinion. 20 C.F.R. § 404.1527(c)(1)–(6); *see also Scrogham v. Colvin*, No. 13-3601, 2014 WL 4211051, at *8 (7th Cir. Aug. 27, 2014). "If the ALJ discounts the physician's opinion after considering

these factors, we must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons – a very deferential standard" that the Seventh Circuit has deemed "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citations omitted).

In this case, the ALJ did not give the opinion of Dr. Goldstein, Siegel's treating psychiatrist, controlling weight stating that the opinion was based largely on Siegel's own subjective reports of symptoms and not supported by objective evidence. Doc. No. 9 at 32. In support of this conclusion, the ALJ cites to very little specific evidence in the record. First, the ALJ notes an inconsistency between testing, which showed Siegel's memory was in the Average to High Average range, and the extreme work limitations Dr. Goldstein reported in his opinion. *Id.* Second, the ALJ simply states that "the record does not support a finding that claimant has difficulty being around other people" without any identification of evidence in the record to support his conclusion. *Id.* Reading the ALJ's decision in context, the Court assumes that the ALJ is relying on evidence from Dr. Lovko and Dr. Shipley that he referenced two paragraphs before his discussion of Dr. Goldstein's opinion. *See id.* Even so, the ALJ's rationale as to why he refused to give controlling weight to Dr. Goldstein's opinion is unclear. Moreover, the ALJ's decision does not give the Court confidence that the ALJ considered all the regulatory factors in reaching his conclusion to give Dr. Goldstein's opinion only little weight.

Of greater concern to the Court, however, is the lack of explanation in the ALJ's opinion as to the past, present, and future effects of Siegel's mental impairments. Often misunderstood, the effects of mental illness must be evaluated differently than the effects of physical impairments because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v.*

11

*Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010); *Wilson v. Astrue,* 493 F.3d 965, 967–68 (8th Cir. 2007); *Kangail v. Barnhart,* 454 F.3d 627, 629 (7th Cir. 2006)); *see also Spiva v. Astrue,* 628 F.3d 346, 348 (7th Cir. 2010).

Here, the ALJ appears to have relied heavily on assessments of Siegel's symptoms resulting from her mental impairments as reported at single points in time to support both his RFC determination and his rejection of Dr. Goldstein's opinion. Given the insufficiency of the ALJ's written rationale for giving less than controlling weight to Dr. Goldstein's opinion, the Court cannot determine whether the ALJ properly considered the ongoing nature of Siegel's mental illness and its potential effects on her ability to perform work. As a result, the ALJ's conclusion that Dr. Goldstein's opinion is not entitled to controlling weight is not supported by substantial evidence leaving the RFC determination also improperly supported.

Therefore, remand is appropriate in this case pursuant to sentence four for 42 U.S.C. § 405(g). Because the Commissioner will be conducting further proceedings related to Siegel's first application for disability benefits, the Court need not address Siegel's additional arguments related to the Step Two, Step Three, Step Four, and Step Five analyses or a sentence six remand. The Commissioner may consider these issues on remand.

## III. CONCLUSION

Because the ALJ failed to provide an adequate rationale for refusing to give the opinion of Siegel's treating pscyhiatrist, Dr. Goldstein, controlling weight, the RFC determination is not supported by substantial evidence. As a result, **GRANTS** Siegel's request for remand pursuant to sentence four of 42 U.S.C. § 405(g). [Doc. No. 11]. This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. The Clerk is **DIRECTED** to

12

terminate the case.

**SO ORDERED.**

Dated this 4th day of September, 2014.

                                                   S/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge